EBENEZER MOULTON *vs.* INHABITANTS OF RAYMOND.

*Commutation.*

A town cannot constitutionally raise money to reimburse one of its citizens for the amount paid by him as commutation under the act of congress of March 3, 1863, c. 75, § 13.

*Thompson* v. *Pittston*, 59 Maine, 545, re-examined and reaffirmed.

ON REPORT from the superior court of this county.

ASSUMPSIT on the following note indorsed by the payee to the plaintiff.

'For value received by the town of Raymond, and pursuant to a vote passed by said town at a legal meeting of the inhabitants thereof, holden at the town-house in said Raymond on the third day of August, A. D. 1863, and which vote is made a part of these presents, the inhabitants of said town, in their corporate capacity, promise to pay Barn. H. Nason, or order, the sum of three hundred dollars within one year from the date hereof, and interest thereon annually, at the treasurer's office in the town of Raymond until said sum shall be paid. In testimony of which vote and promise, the undersigned selectmen and treasurer of said town, in our official capacity, hereunto subscribe the name of said town, at Raymond on this fifth day of September, A. D. 1863. Inhabitants of the town of Raymond by,

IRA WITHAM, } *Selectmen for and in*
FRANCIS SMALL, } *behalf of said town.*

JOHN NASH, *Treasurer.*'

The other facts sufficiently appear in the opinion.

*H. J. Swazey & Son*, for the plaintiff.

*Howard & Cleaves*, for the defendants.

APPLETON, C. J. The second article in the warrant calling a town meeting of the inhabitants of Raymond, on Aug. 3, 1863, was, 'To see if the town will pay a bounty to drafted men or substitutes when they are mustered into the United States' service, and if so, how much.'

Upon this article, the vote was in the negative ' by vote of twenty-four yeas and forty-eight nays.'

The question presented for the consideration of the town by the second article in the warrant would thus seem to have been finally disposed of.

The town then voted ' to pay a bounty of $300 to every man that is drafted, and may be accepted by the board to examine drafted men, and that the selectmen and treasurer be authorized to raise the same on the credit of the town.'

It will be perceived that by this vote there was no requirement that the individual drafted and accepted should be mustered into the service of the United States. It was enough that he was drafted and liable to do duty, though he should never enter the service of the United States. It was a vote to pay the commutation money, which was allowed by the Act of Congress, c. 75, § 13, approved March 3, 1863, to be paid in lieu of actual service, to all who were drafted and liable to do duty, but who paid commutation money.

The liability of one drafted, but who will neither serve nor procure a substitute, to pay the sum fixed as and for commutation, is a personal liability, which he is as much bound to discharge as he is to pay a tax assessed against him, or to discharge a debt due, or to do or perform any act, the doing or the performance of which is imposed by contract or by statute. A town cannot raise money gratuitously to discharge the pecuniary obligations of its citizens.

The payee of the note in suit was never mustered into the military service of the United States. He chose to pay the sum fixed as commutation. The town could not constitutionally raise money to pay this sum for him, any more than it could to pay any debts he might owe. It is not a legitimate public purpose to raise money to give away to private individuals. This question was very fully and carefully considered in *Thompson* v. *Pittston*, 59 Maine, 545, and of the soundness of the conclusions to which this court then arrived, we have no doubt.                *Plaintiff nonsuit.*

CUTTING, WALTON, DICKERSON, and DANFORTH, JJ., concurred.